# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**KERRI SMITH**                                    **CIVIL ACTION**

**VERSUS**                                         **NO. 11-2922**

**ROBERT TANNER, WARDEN**                          **SECTION "I"(6)**

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2). Accordingly, it is recommended that the petition be DENIED WITH PREJUDICE.

## I. PROCEDURAL HISTORY

On April 23, 2008, petitioner, Kerri Smith, presently incarcerated in Rayburn Correctional Center, was found guilty, following trial by jury, on two counts of armed robbery with a firearm. (St. rec., vol. 2, p. 377). On May 12, 2008, Smith was sentenced

in the Twenty-Second Judicial District Court for the Parish of St. Tammany, to 35 years incarceration. (St. rec., vol. 2, p. 383). On July 31, 2008, the district court, in light of the fact that Smith's original co-defendants all received 25-year sentences, amended Smith's sentence to 25 years incarceration. (St. rec., vol. 2, pp. 387-388). On March 27, 2009, the Louisiana First Circuit Court of Appeal remanded the matter for resentencing in light of the fact that Smith was convicted of two counts of armed robbery by use of a firearm, but he received a single sentence of 25-years imprisonment. *State v. Smith*, 2008-KA-1993, 2009 WL 838317 (La. App. 1 Cir. 2009). In accordance with the appellate court's remand, the district court, on May 26, 2009, resentenced Smith to concurrently running sentences in connection with his convictions, to run concurrently, for a total of 25 years imprisonment without benefit of parole, probation or suspension of sentence. (St. rec., vol. 2, pp. 407-411).

On September 10, 2010, the Louisiana First Circuit Court of Appeal affirmed Smith's convictions and sentences. *State v. Smith*, 46 So.3d 286 (Table), 2010-KA-0344, 2010 WL 3527534 (La. App. 1 Cir. 2010). On February 25, 2011, the Louisiana Supreme Court denied Smith's writ application, thereby rendering his conviction and sentence final. *State v. Smith*, 58 So.3d 455 (La. 2011).

On November 3, 2011, Smith filed the instant habeas petition, raising the same claims that he raised, *pro se*, on direct appeal. Smith asserts: 1) that his jury composition was unconstitutional because two jurors were not legally qualified to serve; 2) he was denied a fair trial because State's witness, Detective Sean McClain, was allowed to offer hearsay

evidence; and, 3) counsel rendered ineffective assistance of counsel by failing to move to suppress his confession. In its response (fed. rec. doc. 11, pp. 3-4), the State concedes, and a review of the record confirms, that Smith's habeas petition is timely and that he has exhausted his state court remedies. Accordingly, the court shall proceed to address the merits of Smith's claims following its review of the pertinent facts and standard of review.

## II. **FACTS**[1]

Around 1:30 in the afternoon on September 21, 2006, petitioner and two other men dressed in black, wearing masks, and armed with guns entered the Statewide Bank in Slidell. A fourth man waited in the car. The perpetrators pulled their guns, ordered bank employees to the ground, physically handled them, threatened to kill them, and held the guns to the bank employees' heads. After forcing the tellers to open their money drawers, the perpetrators took the money and fled. After the vehicle, used to flee the crime scene, crashed into another vehicle, petitioner attempted to flee into the woods, where he struggled with officers and was arrested. He was found in possession of a gun at the time of his arrest.

## III. **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. §2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions

---

[1]The facts have been taken from the Louisiana First Circuit's opinion, *Smith*, 2010 WL at *1.

of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable

4

determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## IV. ANALYSIS

### Claim 1): Unconstitutional Jury Composition Because Two Jurors Were Not Legally Qualified to Serve

Smith argues that his constitutional rights were violated because two jurors, Cynthia Frazier and Peggy Armstrong, "were not legally qualified to preside over [his] trial." (Fed. rec., doc. 1, memorandum in support of petition for writ of habeas corpus, p. 3). Smith complains that Frazier was a member of the jury despite the fact that "during voir dire, [she] openly expressed her inability to be a fair and impartial juror in [his] case." *Id.*

The voir dire transcript reflects that Frazier informed the trial court that she knew St. Tammany Parish District Attorney, Walter Reed. Thereafter, the following colloquy ensued:

> BY THE COURT:
>     How do you know Mr. Reed?
>
> BY MS. FRAZIER:
>     He was my neighbor. I've been knowing him for 25 years. Our children were friends.
>
> BY THE COURT:
>     Do you see him still? Do you socialize with him in any way still?
>
> BY MS. FRAZIER:
>     No. Just to say hello if I do see him.
>
> BY THE COURT:
>     Do you feel like you would owe an explanation to Mr. Reed for any verdict you may render if you're chosen as a juror?

> BY MS. FRAZIER:
> No.
>
> BY THE COURT:
> Do you feel that you could be a fair and impartial juror no matter what verdict you render if you see Mr. Reed and not have to worry about any way you have known him in the past?
>
> BY MS. FRAZIER:
> No, sir.

(St. rec., vol. 1, p. 86).

When read in its entirety, it is clear that Smith's argument is based upon an isolated portion, "[d]o you feel that you could be fair and impartial", of the above exchange, and Frazier's negative response thereto. However, this small snippet of the pertinent voir dire examination is incongruous to the rest of Frazier's statements, namely, that she did not socialize with Mr. Reed and that her acquaintance with him would not affect her verdict, she would feel no compulsion to explain her verdict to Mr. Reed. The state court's last, inartful question, was along this same vein. Basically, the court again asked Ms. Frazier whether her past association with Mr. Reed, along with the fact that, as his neighbor, she saw him on occasion, would hinder her ability to be a fair and impartial juror. In response, Ms. Frazier replied, "No, sir." Accordingly, the court finds that the fact that Ms. Frazier was a member of Smith's jury did not render his trial unconstitutional.

With regard to Ms. Armstrong, Smith asserts that she was included on the jury despite the fact that the State successfully challenged her. (*See* St. rec., vol. 2, p. 249). A review of

the voir dire transcript reflects that the trial judge, after all challenges had been made, reviewed with counsel and his clerk which voir dire members had been chosen to serve on the jury.

> BY THE COURT:
> I'm going to reread all of the jurors and the alternates so you can check it against your notes and the clerk can check it against her notes.
> Brenda Shiflett, Tracey Jones, Rebecca Dufour, Luther Jones, Joseph Cannon, Michael Grabert, Cynthia Frazier, Lee McMillan, Terrilyn Lemoine, Lauren Glass, Gerald Fayard, William Tackett, alternate number one, Linda Davis, alternate number two, Marvin Haydel.

(St. rec., vol. 2, p. 251).

After all parties agreed that the above list was correct, the court swore in the jurors that had not previously been sworn, providing:

> BY THE COURT:
> As I call your name, please stand and be sworn. Terrilyn Lemoine, Lauren Glass, Gerald Fayard, William Tackett, and we're going to swear in as alternate jurors, Linda Davis and Marvin Haydel. You can stand up, please.

(St. rec., vol. 2, p. 251).

Thereafter, in parentheses, the court reporter transcribed court proceedings, providing:

> (Whereupon, at this time, TERRILYN LEMOINE, LAUREN GLASS, GERALD FAYARD, PEGGY ARMSTRONG, LINDA DAVIS AND MARVIN HAYDEL were sworn in to serve as jurors in this case.)

*Id.*

That the court reporter mistakenly replaced the actual juror's name, William Tackett, with Peggy Armstrong's name, is evidenced by the fact that the trial judge made no mention

7

of Armstrong in instructing jurors where to sit in the jury box.

> BY THE COURT:
> Brenda Shiflett, Tracy Jones, Rebecca Dufour, Luther Jones, Joseph Cannon, Michael Grabert, Cynthia Frazier, Lee McMillan. Actually, ma'am, I prefer you to be on the front row. I'm sorry. I want six in the front row and six in the back row. ...Terrilyn Lemoine, Lauren Glass, Gerald Fayard, and William Tackett. And the two alternate jurors, Linda Davis – Ms. Davis, you can sit on the back row for me, please. And Mr. Haydel, you can sit on the front row right here.

(St. rec., vol. 2, p. 252).

Based upon the above, the court finds that Peggy Armstrong was not a member of the jury which convicted Smith. This fact is confirmed by the Louisiana First Circuit Court of Appeal which provided: "Of the two jurors of which [Smith] complains, one was successfully challenged for cause. Thus, she did not actually serve on [his] jury, although an apparent error in the record lists her as being sworn in. *Smith*, 2010 WL 3527534 at *4.

Not only did the state appellate court find that Peggy Armstrong did not actually serve as a member of the jury, the court further noted that Smith's claim in this regard, along with his challenge to juror Cynthia Frazier, were procedurally barred.

> No objections relevant to this prospective juror [Peggy Armstrong] appear in the record. As for the other complained-of juror [Cynthia Frazier], no objections were made to her service. An irregularity or error cannot be availed of after verdict unless, at the time the ruling or order of the court was made or sought, the party made known to the court the action which he desired the court to take, or of his objections to the action of the court, and the grounds therefor. LSA-C.Cr.P. art 841A. Accordingly, this assignment of error is not preserved for

8

*Id.* appellate review.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir.1997); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. *Amos*, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the

state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Amos*, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902. A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id*.

In the instant situation, the Louisiana First Circuit issued the last reasoned decision. The state appellate court denied Smith's claim, that his jury was unconstitutionally tainted, based on the procedural ground that Smith failed to lodge a contemporaneous objection, citing La.C.Cr.P. art 841 in support of its finding. *Smith*, 2010 WL 3527534 at *4.

It is well-settled that Louisiana's contemporaneous objection rule is an independent and adequate state procedural ground. *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir.2002) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87-88, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). When the state court relies on this procedural default in dismissing the claim, as it did here, the claim is immune from federal review. *Id*.

A federal habeas petitioner, however, may be excepted from the procedural default rule if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle v. Isaac*, 456 U.S. 107, 129, 102

S.Ct. 1558, 71 L.Ed.2d 783 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The mere fact that petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486.

In this case, Smith provides no basis to support a finding that he had good cause for failing to raise objections in connection with the persons chosen to serve as jurors in his trial. "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue*, 131 F.3d 466, 497 (5th Cir.1997) (citing *Engle*, 456 U.S. at 134 n. 43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and Smith has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir.1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir.1977)).

The instant claim is therefore procedurally barred from review by this federal habeas corpus court absent a showing that a fundamental miscarriage of justice will occur if the merits of the claim are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). To establish a fundamental miscarriage of justice, a petitioner must provide evidence that would support a "colorable

showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to his guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tx.1997) (footnote omitted); *Nobles v. Johnson*, 127 F.3d 409, 423 n. 33 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998) (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F .3d at 903.

Smith does not present and the record does not contain evidence that suggests his actual innocence. Accordingly, Smith has failed to overcome the procedural bar to his claim that his trial was unconstitutional based upon a tainted jury.

**Claim 2) Denied Fair Trial Due to Admission of Hearsay Evidence**

Smith argues that his constitutional right of confrontation was denied by virtue of the fact that the technician, who tested to see if the firearms used in the armed robbery were in good working condition, did not testify at trial. As such, he was unconstitutionally denied his right to cross-examine the technician.

A review of the record reflects that the technician who tested the firearms, in fact,

did not testify. Instead, Detective Sean McClain testified as to what the technician informed him regarding the test results. Specifically Detective McClain testified as follows:

> Q: The first question is there were a number of weapons involved in this, correct?
> A: Yes, sir.
> Q: Do you remember how many?
> A: Four.
> Q: Were all those weapons different in caliber and size?
> A: Yes, sir.
> Q: Did you personally see to it that those weapons were test fired?
> A: Yes, sir.
> Q: And that all-what were the results of those test firing?
> A: That they all fired and they were entered into IVIS.
> Q: First off, they were all fired. So the jury understands, what does that mean?
> A: Basically, they were sent to the St. Tammany Crime Lab where a technician fires all of the weapons to get a ballistics check, and then that ballistics check-
>
> [Defense Counsel]: Your Honor, I'd object if he didn't do this. He said a technician did it.
> ***
> Court: I sustain the objection. Just lay a better foundation.
> ***
> Q. Who test fired it?
> A. Somebody at the sheriff's office lab.
> Q. Did they report back to you in regards to the results of the test?
>
> [Defense Counsel]: Your honor, I still object to what somebody else told him or what he read about it. He didn't do it.
>
> Court: Overrule the objection.
>
> Q. What [were] the results of the test firing?
> A. That the weapons were fired.

*Smith*, 2010 WL 3527534 at *4.

In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314

(2009), the Supreme Court held that the admission of expert documentation or, more specifically, certificates of analysis, regarding physical evidence, were testimonial by nature and, as such, the State's failure to produce the expert witness for cross-examination constituted a violation of defendant's right of confrontation. *See also Bullcoming v. New Mexico*, __U.S. __, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011) (fact that analyst who neither participated in nor observed the testing testified rather than analyst who actually performed testing, constituted a violation of petitioner's right of confrontation).

Based upon the above, this court finds that the trial judge, by virtue of his admission of Detective McClain's hearsay testimony, violated the Confrontation Clause. However, "Confrontation Clause violations are subject to harmless error analysis." *Fratta v. Quarterman*, 536 F.3d 485, 507-508 (5th Cir. 2008) (citing *Horn v. Quarterman*, 508 F.3d 306, 322 n.24 (5th Cir. 2007); *Coy v. Iowa*, 487 U.S. 1012, 1021, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988); *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

In addressing this matter on direct appeal, the Louisiana First Circuit Court of Appeal recognized that the trial court's "erroneous admission of hearsay" mandated reversal only "when there is a reasonable possibility that the evidence might have contributed to the verdict. The correct inquiry is whether the reviewing court is convinced that the error was harmless beyond a reasonable doubt." *Smith*, 2010 WL 3527534 at *4 (citation omitted).

The Louisiana First Circuit concluded that the "error in allowing the testimony was

harmless beyond a reasonable doubt." *Id.* at *5. The court reasoned:

> In this case, the State's evidence was strong and any evidence that the weapons were in good working condition was unnecessary to support the verdict. A gun, pointed at a robbery victim, carries the inherent threat that death or great bodily harm is likely to result. The jurisprudence has long held that unworkable or unloaded guns can constitute dangerous weapons when used in a manner likely to produce death or great bodily harm. The likelihood of this serious harm can come from the threat perceived by victims and bystanders. The highly charged atmosphere of a pistol robbery is conducive to violence, regardless of whether the pistol is loaded or workable, because the danger created invites rescue and self-help.

*Id.* (citing *State v. Leak*, 306 So.2d 737 (La. 1975); *State v. Levi*, 259 La. 591, 250 So.2d 751 (1971).

The court finds that the Louisiana First Circuit's analysis does not constitute an unreasonable application of Supreme Court law to the facts of this case. The state appellate court recognized an error with respect to the admission of Detective McClain's hearsay testimony. Thus, the court did not run afoul of the Supreme Court's decision in *Melendez-Diaz, supra.*[2] Thereafter, the court properly engaged in a harmless error analysis, in

---

[2]The court notes that under the deferential review afforded under 28 U.S.C. Section 2254(d)(1), a comparison of the Louisiana First Circuit's opinion to the Supreme Court's decision in *Melendez-Diaz*, is appropriate as *Melendez-Diaz* was "clearly established law" at the time the Louisiana First Circuit issued its opinion. The *Melendez-Diaz* decision was rendered in 2009, while the Louisiana First Circuit's decision, denying Smith relief, was rendered in 2010. *See Leonard v. Goodwin*, 2011 WL 4435176 at *10 (M.D. La. Aug. 25, 2011) (Relevant state decisions regarding petitioner's confrontation clause claim were rendered prior to 2007. As such, state decisions did not have to be in accord with *Melendez-Diaz*, which was not issued until 2009, because "it was not clearly established law at the time of the state court decision in this case.").

accordance with the Supreme Court decisions in *Coy v. Iowa*, and *Delaware v. Van Arsdall*. Accordingly, the instant claim is without merit.

### Claim 3) Counsel Was Ineffective in Failing to File Motion to Suppress Confession

Smith claims that his confession was unlawfully coerced and, as such, counsel was ineffective in failing to file a motion to have his confession suppressed. In addressing this issue on direct appeal, the Louisiana First Circuit Court of Appeal first reviewed applicable Supreme Court law, along with corresponding state law.

> A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, §13 of the Louisiana Constitution. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that: (1) his attorney's performance was deficient; and (2) the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The error is prejudicial if it was so serious as to deprive the defendant of a fair trial or "a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. In order to show prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *State v. Felder*, 2000-2887, pp. 10-11 (La. App. 1 Cir. 9/28/01), 809 So.2d 360, 369-70, *writ denied*, 2001-3027 (La. 10/25/02), 827 So.2d 1173. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant, if the defendant makes an inadequate showing on one of the components. *State v. Serigny*, 610 So.2d 857, 860 (La. App. 1 Cir. 1992), *writ denied*, 614 So.2d 1263 (La. 1993).

*Smith*, 2010 WL 3527534 at *5.

Thereafter, the state appellate court noted that the trial court, pursuant to an oral motion to suppress, held an evidentiary hearing with regard to whether Smith's confession was physically coerced. Pursuant to this hearing, the court heard testimony from Detective Ralph Morel who took Smith's statement. Morel described Smith as "cooperative" and "denied forcing [Smith] to give the statement by threat or promise." *Id.* at *6.

The court also heard testimony from an arresting officer, Captain Kevin Swann. Captain Swann provided that Smith wrecked the getaway car he was driving, then fled the wreckage on foot. Swann caught Smith and subsequently used force, striking Smith "to get [his] hands from underneath him", fearing that Smith may be holding a gun. *Id.*

In support of his claim that he was physically coerced to confess to the armed robbery, Smith has attached two pictures (exhibits B and C) to his petition. Exhibit B represents a picture taken on the date Smith was booked. Though the picture is far from clear, it appears to reflect swelling of Smith's face. In contrast, a second picture, exhibit C, represents a different depiction of Smith, one without the swelling. According to Smith, exhibit C is a photograph "taken by the Slidell Police Department upon [his] initial arrival at their facility...." (Fed. rec. doc. 1, memorandum in support of petition for writ of habeas corpus, p. 11). However, while the exhibit B photograph is clearly labeled, "Suspect Rap Sheet", there is no such label on the exhibit C photograph. Other than Smith's assertion, there is no evidence that exhibit C represents a picture taken by police officials upon Smith's "initial

arrival" at police headquarters.³

Smith also relies on his "Booking Report & Medical Questionare" wherein Corrections Officer Clint McCall checked "NO" to the question regarding whether Smith had any "[v]isual signs of pain or bleeding suggesting the need for emergency services." (Exhibit F). Smith asserts that Officer's McCall's negative response is further proof that he was not beaten when he arrived at the police station. However, the fact that Officer McCall assessed that Smith had no "need for emergency services" does not prove, as Smith contends, that he was in fine shape after being in a car wreck, wrestled to the ground by a police officer, and struck numerous times to ensure that he was not concealing a gun under his body.

Finally, Smith points to medical bills (exhibits D and E) from Slidell Memorial Hospital and Northlake Radiology Consultant, respectively, as evidence of his alleged beating to coerce a confession. However, once again, Smith's "evidence" does not support his claim. These bills make no reference to any injuries which prompted the treatment for which Smith was billed. In fact, the bills make no reference to the medical services which were performed.

Based upon the above, this court finds that the state appellate court's determination that Smith did not suffer a violation of his constitutional right to effective assistance of

---

³Smith apparently offered the same pictures in support of the instant claim on direct appeal. The Louisiana Fourth Circuit makes reference to the fact that Smith "contends that two photographs taken of him after the robbery show that he was physically assaulted while in the custody of the Slidell Police Department." *Smith*, 2010 WL 3527534 at *6. The state appellate court likewise found that Smith's evidence was insufficient to support his allegation.

counsel does not constitute an unreasonable application of *Strickland* to the facts of this case. Smith has failed to show that he was prejudiced by counsel's alleged deficiency in not actively pursuing his claim of physical coercion and submitting the "evidence" that Smith has presented herein. Accordingly;

RECOMMENDATION

It is hereby **RECOMMENDED** that the application of petitioner, Kerri Smith, for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).[4]

New Orleans, Louisiana, this __12th__ day of _____March_____, 2012.

　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　LOUIS MOORE, JR.
　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[4]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.